UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| R.T., an individual, | CASE NO. 2:24-cv-590 |
| Plaintiff, | ORDER |
| v. | |
| RRI WEST MANAGEMENT LLC, | |
| Defendant. | |

## 1.  INTRODUCTION

Plaintiff R.T. alleges she was the victim of sex trafficking at the Red Roof Inn on International Blvd. in Seattle, Washington. She sues the owner-operators of the Red Roof Inn, Defendant RRI West Management, LLC ("RRI West") under the Trafficking Victims Protection Reauthorization Act (TVPRA) as beneficiaries of sex trafficking, seeking damages.

Before the Court is RRI West's motion to dismiss. Dkt. No. 21. The Court has reviewed the papers filed in support of and opposition to the motion, and the relevant record, and DENIES the motion for the reasons stated below.

**ORDER** - 1

## 2. BACKGROUND

Plaintiff, proceeding under the pseudonym R.T., asserts a single claim under 18 U.S.C. § 1595(a), the TVPRA's civil liability provision. This statute allows victims to sue those who benefit from violating the statute's prohibition against criminal sex trafficking.

R.T. alleges that in 2015 and 2016, she was "induced by force, fraud, and coercion by her trafficker(s) to engage in commercial sex" at the Red Roof Inn at 1638 International Blvd., Seattle, Washington 98188. Dkt. No. 1 ¶ 9. She alleges that she regularly interacted with hotel staff, and that they observed "a frequent procession of sex buyers going in and out of [her] room[]." *Id.* ¶ 49. As a result, R.T. has suffered "significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked[,]" including depression, anxiety disorders, and PTSD, "which in turn affected daily functioning." *Id.* ¶ 52.

R.T. alleges that hotel employees knew about her trafficking and participated in it by accepting payments from traffickers to act as lookouts for police activity. *Id.* ¶ 38. She also alleges many "red flags" of sex trafficking were evident, including "constant foot traffic of sex buyers" to the traffickers' rented rooms, victims walking around the grounds "drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, which bruises, and malnourished and in sexually explicit clothing," conspicuous and suspicious items and people in full view of housekeeping staff, and traffickers "monitoring hotel hallway or door of [the] room(s) or walking hotel perimeter[.]" *Id.* ¶ 46.

On December 16, 2016, R.T. received the following text message from her trafficker:

> Bitch I'm on ur head and ima find u you will never be able to run away from me and those bitches workin at the red roof inn hotel know who the fuck I am and that's why they didn't do anything when yo stupid ass went up tryna get them to help you after I fucked up your face and gave you that black eye, play with me if you want to bitch . . . I will have you and your whole family done u hoe for me and get my money that's it[.]

*Id.* ¶ 47.

R.T. alleges that RRI West was the operator, manager, and franchisee of the Red Roof Inn during 2015 and 2016, *Id.* ¶¶ 3–7, and that its failure to respond to overt signs of sex trafficking and failure to implement preventive policies enabled her repeated victimization at the Red Roof Inn. R.T. claims RRI West "participated in a venture by operating the [Red Roof Inn] that rented room(s) to individuals that [RRI West] knew or should have known were involved in sex trafficking, including as to R.T., in violation of the TVPRA." *Id.* ¶ 37. Because RRI West operated the Red Roof Inn and rented rooms to R.T.'s traffickers, R.T. alleges they participated in an enterprise involving risk and potential profit. *Id.* ¶¶ 40–41. "A continuous business relationship existed between the [Red Roof Inn], its agents, employees[,] and staff, and R.T.'s traffickers, in part, in that the hotel repeatedly rented room(s) to individuals they knew or should have known were involved in sex trafficking on the premises, including as to R.T." *Id.* ¶ 44.

# 3. DISCUSSION

**3.1  Rule 12(b)(6).**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Courts may dismiss a case under Rule 12(b)(6) "where there is no cognizable legal theory" that applies to the facts alleged, or where there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Rule 12(b)(6) standard requires the court to take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019).

**3.2  Plaintiff has sufficiently pled a TVPRA claim.**

Congress enacted the Trafficking Victims Protection Act in 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022) (internal quotation marks omitted). In 2003, Congress added a civil remedy provision codified at 18 U.S.C. § 1595. *Id.* Congress again

reauthorized and amended the TVPRA in 2008 "to expand the civil remedies provision." *Id*. It now states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C § 1595(a). R.T. does not allege RRI West was a perpetrator, instead she brings a claim under a theory of beneficiary liability.

"To succeed on a beneficiary liability theory under § 1595(a), the plaintiff must show that the defendant '(1) knowingly benefitted, (2) from participation in a venture . . . , (3) which they knew or should have known was engaged in conduct that violated the TVPRA.'" *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *6 (W.D. Wash. July 2, 2024) (quoting *Ratha*, 35 F.4th at 1175 (citing 18 U.S.C. § 1595(a))).

RRI West raises four main arguments about why R.T. fails to meet the standard for beneficiary liability. The Court addresses each in turn.

### 3.2.1    R.T. satisfies the "knowingly benefitted" prong of beneficiary liability.

The "knowingly benefitted" element is satisfied by R.T.'s allegation that her traffickers rented rooms at the Red Roof Inn. Dkt. No. 1 ¶¶ 32–36. The "knowingly benefitted" prong of the Section 1595(a) standard is not difficult to satisfy, as courts have consistently recognized "'that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the

ORDER - 5

§ 1595(a) standard.'" *S.A.S.*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *9 (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019)).

RRI West's argument that there is no causation between room rentals and trafficking fails because R.T.'s allegations go beyond a mere arm's-length business arrangement, as she alleges active participation by hotel staff. Dkt. No. 23 at 6.

In sum, R.T. has adequately alleged that RRI West knowingly benefited financially from the sex trafficking venture through room rentals, which satisfies the first element of beneficiary liability under the TVPRA.

### 3.2.2   R.T. plausibly alleges that RRI West actively participated in a trafficking venture in violation of Section 1591(a).

Under the TVPRA, "participation in a venture" means "taking part or sharing in an enterprise or undertaking that involves danger, uncertainty, or risk, and potential gain." *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). The venture need not be explicit, "but [the plaintiff] must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970. Courts in this District found that when a defendant "provides assistance, support, or facilitation to the trafficker through such a 'continuous business relationship,' a court or jury may infer that the participant and trafficker have a 'tacit agreement' that is sufficient for 'participation' under Section 1595." *S.A.S.*, No. 3:23-CV-06038-

ORDER - 6

TMC, 2024 WL 3276417, at *7 (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023)).

R.T.'s allegations extend well beyond mere arm's-length transactions that would be insufficient to establish participation. Courts have recognized that the standard hotel-guest relationship, standing alone, does not constitute participation in a trafficking venture. But R.T. alleges facts showing RRI West crossed the line from passive observer to active participant in several important ways.

First, R.T. alleges that hotel staff were not merely bystanders but actively facilitated trafficking by accepting payments to serve as lookouts for police activity. Dkt. No. 1 ¶ 38. This goes beyond routine business operations and shows a symbiotic relationship with the traffickers aimed at evading law enforcement detection.

Second, R.T. alleges the existence of a longstanding relationship where staff willfully ignored obvious signs of trafficking, including her visible injuries and a direct plea for help. *Id.* ¶ 47. This shows a pattern of willful blindness, coupled with the text message referencing staff's familiarity with her trafficker, that suggests a tacit agreement to facilitate the trafficking operation. *Id.*

Third, the ongoing nature of the arrangement is highlighted by R.T.'s allegation that her traffickers had "prior commercial dealings with the [Red Roof Inn]," which "the trafficker(s) and [RRI West] wished to reinstate for profit." *Id.* ¶ 45. This suggests a mutually beneficial ongoing business relationship focused on facilitating trafficking activities. These allegations sufficiently establish RRI West's participation in a venture that facilitated sex trafficking.

**ORDER** - 7

RRI West's reliance on *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021), is misplaced. That case involved franchisor liability based solely on licensing and revenue sharing arrangements. *Id.* at 726–27. Here, RRI West is the franchisee, owner, and operator, and R.T.'s allegations cross from merely observing sex trafficking to creating a space that suited her trafficker's needs—specifically, she alleges that hotel staff helped traffickers avoid law enforcement.

Accordingly, R.T. plausibly alleges that RRI West participated in a venture with R.T.'s traffickers even though it should have known such a venture resulted in illegal sex trafficking.

### 3.2.3   R.T. plausibly alleges constructive knowledge by RRI West employees.

The language "knew or should have known" in Section 1595(a) imposes a negligence standard on beneficiaries of trafficking under the TVPRA. *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390, at *5 (W.D. Wash. Sept. 13, 2023) (citing *Doe #1*, 21 F.4th at 725 ("Constructive knowledge . . . is that knowledge which 'one using reasonable care or diligence should have[.]'")); *M.A.*, 425 F. Supp. 3d at 965 ("[T]he words 'should have known,' . . . invokes a negligence standard[.]")). Under this standard, a plaintiff must plead facts that show the defendant "rented rooms to people [it] should have known were engaging in [the plaintiff's] sex trafficking." *S.A.S.*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *8 (quoting *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-001155-WHO, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020)).

RRI West argues that R.T. fails to plausibly allege that it knew or should have known "it was renting rooms to [R.T.'s] traffickers simply because there were 'red flags' relating to commercialized sex and the hospitality industry's general awareness of sex trafficking occurrences." Dkt. No. 21 at 2, 10. This argument is unavailing.

R.T. alleges many "red flags" supporting constructive knowledge of sex trafficking: traffickers directly interacted with hotel employees and paid them to act as lookouts or informants, Dkt. No. 1 ¶ 38, constant foot traffic around and to her room, R.T. and other trafficking victims walked around the hotel grounds impaired by drugs or alcohol, lack of sleep and basic hygiene "with bruises, and malnourished and in sexually explicit clothing," *Id.* ¶ 46. Perhaps most significantly, she presents a message she received from one of her traffickers. *Id.* ¶ 47. If construed in the light most favorable to R.T.'s case, the message suggests that R.T.'s trafficker knew Red Roof Inn employees at the front desk who saw R.T. with a black eye and chose not to intervene despite the likely sex trafficking. *Id.* This is enough to plausibly allege the constructive knowledge element at this early stage in the litigation.

### 3.2.4    R.T. alleges a plausible claim for vicarious liability.

RRI West argues that the TVPRA does not allow vicarious or indirect liability. The Court disagrees. "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Neither party addresses the appropriate standard to apply

**ORDER** - 9

here, but generally, "the well-accepted general principles of franchisor liability—franchisors may be liable where they control or have the right to control day-to-day operations of the franchisee sufficient to establish an agency relationship." *Bartholomew v. Burger King Corp.*, 15 F. Supp. 3d 1043, 1048 (D. Haw. 2014) (collecting cases).

R.T. has alleged facts sufficient to establish a traditional agency relationship between RRI West and the hotel staff. Specifically, R.T. alleges that RRI West was the "operator," "manager," and "franchisee" of the Red Roof Inn, and that it "controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property." Dkt. No. 1 ¶¶ 3–7, 13. This plausibly establishes that RRI West had the right to control how hotel staff performed their duties.

RRI West cites three cases in support of its argument *against* vicarious liability: *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020); *Doe v. Varsity Brand, LLC*, No. 1:22-cv-02139, 2023 WL 4931929, at *7 (N.D. Ohio Aug. 2, 2023); and *OCD Telluride LLC v. Blaney McMurtry LLC*, No. 13-CV-02584-KMT, 2016 WL 153120, at *8 (D. Colo. Jan. 13, 2016). Dkt. Nos. 21 at 12; 23 at 7. But each of these district court cases is distinguishable from this case. *A.B.* considers whether a franchisor can be vicariously liable for the actions of a franchisee. *Id.* at 940. Here, we are dealing only with the franchisee, owner, and operator—RRI West. Further, in *A.B.* the district court found the plaintiff alleged a sufficient agency relationship between a franchisee and franchisor but that their claim was ultimately deficient because it failed to allege that the hotels knew or

should have known that she "was engaging in commercial sex as a result of fraud, force, or coercion." *Id.* at 941. That is opposite of the Court's finding here. In addition, neither *Varsity Brand* nor *OCD Telluride* involve beneficiary liability under the TVPRA.

By contrast, many district courts have recognized vicarious liability between a hotel and its employees under the TVPRA. *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Upon review of the relevant authority, the Court declines to find that the TVPRA precludes vicarious liability."); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021) ("While the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability."). Because R.T. has properly alleged an agency relationship between RRI West and Red Roof Inn staff, dismissal on these grounds is unwarranted.

### 4.  CONCLUSION

Accordingly, the Court DENIES RRI West's motion to dismiss. Dkt. No. 21.

Dated this 31st day of March, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 11